# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

THE CITY OF NEW BEDFORD, et al.,          CIVIL ACTION NO.: 10-10789-RWZ
     Plaintiffs

     v.

GARY LOCKE, et al.,
     Defendants
_____

LOVGREN, et al.,
     Plaintiffs

     v.

GARY LOCKE, et al.,
     Defendants
_____


## LOVGREN PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT


Date: November 22, 2010.        By:  /s/Patrick Flanigan
                          Patrick Flanigan
                          Law Office of Patrick Flanigan
                          NJ Attorney No.: 016092004
                          P.O. Box 42, Swarthmore, PA  19081-0042
                          Tel:  (484) 904-7795
                          Email:  info@lawofficepf.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………......iv

LIST OF EXHIBITS………………………………………………………………..vii

I.   BACKGROUND AND JURISDICTION………………………………………...1

    A.   THE ADMINISTRATIVE PROCEDURES ACT………………………….....2

    B.   THE MAGNUSON-STEVENS ACT……………………………………….....2

II.  SCOPE OF REVIEW……………………………………………………………..2

III. NORTHEAST MULTISPECIES FISHERY………………………………………..3

IV.  BACKGROUND TO COUNTS 1 AND 2……………………………………….....4

    A.   WHAT IS LANDING HISTORY?.........................................................................4

    B.   ADMISSION AND CONSEQUENCES OF LANDING HISTORY……………5

        1.   Public admission of database errors affecting the NE Multispecies………5

        2.   Different fishery, but same database problems…………………………7

V.   CONSTITUTIONAL VIOLATIONS – DUE PROCESS & TAKING…………………..8

    COUNT I…………………………………………………………………………8

VI.  STATUTORY VIOLATIONS UNDER THE MAGNUSON-STEVENS ACT………...10

    COUNT II…………………………………………………………………………10

    COUNT III…………………………………………………………………………11

    COUNT IV…………………………………………………………………………11

    COUNT V…………………………………………………………………………12

    COUNT VI…………………………………………………………………………13

    COUNT VII…………………………………………………………………………14

    COUNT VIII…………………………………………………………………………15

COUNT IX……………………………………………………………………15

VII.  OTHER FEDERAL STATUTORY VIOLATIONS……………………………………16

COUNT X………………………………………………………………….16

    A.  DEFENDANTS DID NOT ANALYZE THE YEARS 1996 THROUGH 2001……………………………………………………………16

    B.  DEFENDANTS DID NOT ANALYZE 2001 THROUGH 2007………..17

COUNT XI…………………………………………………………………18

    A.  THE REGULATORY FLEXIBILITY ACT……………………………18

    B.  THE CONGRESSIONAL REVIEW ACT………………………………18

    C.  PRESIDENTIAL EXECUTIVE ORDER NO.: 12866…………………19

COUNT XII………………………………………………………………...19

COUNT XIII………………………………………………………………..20

VIII.  CONCLUSION, REMEDIES AND ATTORNEY FEES………………………………20

# TABLE OF AUTHORITIES

<u>CONSTITUTION</u>

The Constitution of the United States, U.S. CONST. Amend. V

    (Due process and just compensation clauses) ………………………………………8

<u>PRESIDENTIAL EXECUTIVE ORDERS</u>

    E.O. 12630, § 4(b)………………………………………………………………9

    E.O. 12866………………………………………………………………………18

    E.O. 12866, § 1(b)(7)………………………………………………………10-11

    E.O. 12866, § 4(c)(1)(A)………………………………………………………19

    E.O. 12866, § 4(c)(7)…………………………………………………………19

    E.O. 12866, § 6(a)(3)…………………………………………………………19

<u>STATUTES</u>

The Administrative Procedures Act (APA).

    5 U.S.C. § 504(a)(2)…………………………………………………………...20

The Freedom of Information Act (FOIA), 5 U.S.C. §§ 552 et seq………………………19

    5 U.S.C. § 552(a)(4)(B)………………………………………………………20

    5 U.S.C. § 553(a)……………………………………………………………...18

The Regulatory Flexibility Act (RFA), 5 U.S.C. §§ 601-612.

    5 U.S.C. § 601(3)……………………………………………………………...18

    5 U.S.C. § 602(a)(1-2)………………………………………………………...18

    5 U.S.C. § 602(b)……………………………………………………………...18

    5 U.S.C. § 603…………………………………………………………………18

    5 U.S.C. § 603(a)……………………………………………………………...18

5 U.S.C. § 605(b)…………………………………………………………………...18

5 U.S.C. § 609…………………………………………………………………………18

5 U.S.C. § 702……………………………………………………………………..2

5 U.S.C. §§ 706(2)(A)-(D)…………………………………………………………...2

The Congressional Review Act.

5 U.S.C. §§ 801-808…………………………………………………………………..18

5 U.S.C. § 801(a)(1)(A)………………………………………………………………18

The Magnuson-Stevens Fishery Conservation and Management Reauthorization Act of 2006.

16 U.S.C. § 1801(a)(8)…………………………………………………………………7

16 U.S.C. § 1801(b)(3)…………………………………………………………………7

16 U.S.C. § 1801(c)(3)…………………………………………………………………7

16 U.S.C. § 1802(26)(A)-(B)…………………………………………………………15

16 U.S.C. § 1851(a)……………………………………………………………………2

16 U.S.C. § 1851(a)(1-10)……………………………………………………………...3

16 U.S.C. § 1851(a)(2)………………………………………………………………...10

16 U.S.C. § 1851(a)(4)………………………………………………………………...11

16 U.S.C. § 1851(a)(6)………………………………………………………………...11

16 U.S.C. § 1851(a)(8)………………………………………………………………12-13

16 U.S.C. § 1851(a)(9)………………………………………………………………...13

16 U.S.C. § 1852 et seq………………………………………………………………13-14

16 U.S.C. § 1852(a)(1)…………………………………………………………………2

16 U.S.C. §§ 1852(a)(1)(A-B)………………………………………………………...3, 14

16 U.S.C. § 1852(b)(2)(B)……………………………………………………………14-15

16 U.S.C. § 1852(g)……………………………………………………………………3

16 U.S.C. § 1852(g)(3)(B)………………………………………………11, 14-15, 19

16 U.S.C. § 1852(h)(3)…………………………………………………………11, 14

16 U.S.C. § 1852(i)(2)(C)………………………………….......................11, 14

16 U.S.C. § 1853(a)(1)(C)……………………………………………………...7

16 U.S.C. § 1853a(c)(1)(C)(iii)……………………………………………...15

16 U.S.C. § 1853a(c)(6)(D)………………………………………………...19

16 U.S.C. § 1853a(c)(6)(D)(i)……………………………………………15

16 U.S.C. § 1855(g) et seq………………………………………………………20

16 U.S.C. § 1861(d)……………………………………………………………1

The National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4347.

42 U.S.C. §§ 4321-4347………………………………………………………16

42 U.S.C. § 4332(2)…………………………………………………………...16

## CASE LAW

*Alabama v. Michael Herman Bozeman*, 533 U.S. 146, 121 S.Ct. 2079 (2001)…………………...4

*American Pelagic Fishing Company v. United States*, 379 F.3d 1363 (Fed. Cir. 2004)….........9-10

*Anderson, Receiver v. Yungkau, Executor*, 329 U.S. 482, 67 S.Ct. 428 (1947)………………3, 18

*Armstrong v. Manzo*, 380 U.S. 545 (1965)……………………………………………..9

*Armstrong v. United States*, 364 U.S. 40 (1960)……………………………………………9

*Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586 (1971)……………………………………..9-10

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct. 956 (1998)……………………………………………………………………………...4

*Lucas v. S.C. Coastal Council*, 506 U.S. 1003 (1992)……………………………………9

*Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893 (1976)……………………………….9-10

*Motor Vehicle Manufacturers Association of the United States v. State Farm Mutual Automobile*

*Insurance Co.*, 463 U.S. 29, 103 S. Ct. 2856, 77 L. Ed 2d 443 (1983)……………………………..2

*North Carolina Fisheries Ass'n v. Gutierrez*, 518 F.Supp.2d 62 (D.D.C. 2007)……………..11

*Schoeffler v. Kempthore*, 493 F.Supp.2d 805 (W.D. La., 2007)………………………8-10, 16, 18

CODE OF FEDERAL REGULATIONS

    40 C.F.R. § 1508.7……………………………………………………………………16

    40 C.F.R. § 1508.14……………………………………………………………...16

    50 C.F.R. § 600.10…………………………………………………………....4, 15

    50 C.F.R. § 600.110………………………………………………………………….3

    50 C.F.R. §§ 600.751-600.760…………………………………………...3, 20

    50 C.F.R. §§ 648 et seq……………………………………………………………3

    50 C.F.R. § 648.2……………………………………………………………….4

FEDERAL REGISTER

    75 Fed. Reg. 18113-18132 (Apr. 9, 2010)……………………………………...3, 5

    75 Fed. Reg. 18262-18353 (Apr. 9, 2010)……………………………………3-6

    75 Fed. Reg. 18356-18375 (Apr. 9, 2010)……………………………………...3

    75 Fed. Reg. 55305 (Sep. 10, 2010)………………………………………..12-13, 16-17

## LIST OF LOVGREN PLAINTIFFS' EXHIBITS

P-1:  August 7, 2007, Mid-Atlantic Fishery Council Meeting…………………………………6-8

P-2:  March 1, 2006, FMAT meeting memorandum ………………………………………7, 11

P-3: NOAA Catch Share Policy…………………………………………………...13, 15-17, 19

Law Office of Patrick Flanigan         Attorney for the Lovgren Plaintiffs
By:  Patrick Flanigan
NJ Attorney No.:  016092004
P.O. Box 42, Swarthmore, PA  19081-0042
Tel:  (484) 904-7795    Email:  info@lawofficepf.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
_____

THE CITY OF NEW BEDFORD, et al.,      CIVIL ACTION NO.: 10-10789-RWZ
       Plaintiffs

   v.

GARY LOCKE, et al.,
       Defendants
_____

LOVGREN, et al.,
       Plaintiffs

   v.

GARY LOCKE, et al.,
       Defendants
_____

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF LOVGREN'S MOTION FOR SUMMARY JUDGMENT

## I.  BACKGROUND AND JURISDICTION

Plaintiff Lovgren (herein individually and those similarly situated collectively as "Lovgren" or "Fishermen") seeks relief from a final rule promulgated by a federal agency.  This Court has jurisdiction pursuant to 16 U.S.C. § 1861(d) under the Magnuson-Stevens Act.  The final rules being challenged were published in the Federal Register on April 9, 2010.  On May 7, 2009, Lovgren filed a complaint in the U.S. District Court for New Jersey as civil case number 3:09-02148-FLW.  On July 13, 2010, by stipulation and order that case was transferred to the U.S. District Court for the District of Massachusetts and assigned as case 1:10-11168-GAO.

1

On August 3, 2010, the Honorable Rya W. Zobel entered an Order granting the motion to consolidate cases under 1:10-10789.  Docket No.: 19.

      A.      THE ADMINISTRATIVE PROCEDURES ACT (APA).

The APA provides that a "person suffering legal wrong because of agency action . . . is entitled to judicial relief thereof."  5 U.S.C. § 702.  Pursuant to 5 U.S.C. § 706(2), the reviewing court shall "hold unlawful and set aside agency action," if not in accordance with the APA.[1]

      B.      THE MAGNUSON-STEVENS ACT, 16 U.S.C. §§ 1801 et seq.

To manage the nation's fish stocks the Magnuson-Stevens Act created eight regional fishery management councils and each council is responsible for producing a fishery management plan (FMP) that regulates fishing within its geographical region.  16 U.S.C. § 1852(a)(1).  All FMPs "shall be consistent with" the ten national standards.  16 U.S.C. § 1851(a).

## II.    SCOPE OF REVIEW

Notwithstanding the well established deference given to agency decision-making, the agencies are still held to standards and courts are to take a hard look.  *Motor Vehicle Manufacturers Association of the United States v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed 2d 443 (1983) (the agency decision is arbitrary and capricious, for example, for failing to: (i) examine relevant data, (ii) have a rational connection between facts found and choices made, (iii) consider important aspects of the problem, and (iv) have plausible explanations) (internal citations omitted).   The reviewing court "may not supply a reasoned basis" on behalf of the agency.  *Motor Vehicle*, 463 U.S. at 43.  Nor may the court accept "counsel's post hoc rationalizations for the agency action" because the agency is responsible for articulating the reasons.  *Motor Vehicle*, at 50.  (internal citations omitted).  In

---

1.  In the interest of brevity, when Lovgren avers violations of the APA it is meant to be any single, combination or all of 5 U.S.C. § 706(2) subsections (A) through (D).

addition, Defendants are also subject to additional statutory requirements as set forth below.

## III.   NORTHEAST MULTISPECIES FISHERY

The Northeast Multispecies Fishery Management Plan is managed under the authority of the Magnuson-Stevens Act.  16 U.S.C. § 1852(g).  Lovgren brings this action to challenge three final rules that were published in the Federal Register on April 9, 2010 as follows:

   a.   at 75 Fed. Reg. 18113-18132 (Apr. 9, 2010) (Sector Operations Plans and Contracts);

   b.   at 75 Fed. Reg. 18262-18353 (Apr. 9, 2010) (Amendment 16 to the NE Multispecies Fishery); and

   c.   at 75 Fed. Reg. 18356-18375 (Apr. 9, 2010) (Framework Adjustment 44).

All three of the final rules (collectively "Amendment 16") were implemented as the Northeast Multispecies Fishery Plan (NE Multispecies) at 50 C.F.R. §§ 648 et seq.  The New England Fishery Management Council (NEFMC) was the lead council in developing Amendment 16 with the Mid-Atlantic Fishery Management Council (MAFMC) because the NE Multispecies fishery extends beyond the geographical authority of the NEFMC.  50 C.F.R. § 600.110.  Therefore, the geographical range of NEFMC's duties, obligations and responsibilities encompasses the stakeholders from Maine to North Carolina.  16 U.S.C. §§ 1852(a)(1)(A-B).  Lovgren alleged thirteen counts each warranting a remand by this Court for development consistent with the law.  Lovgren also suggests the formation of a fishery negotiation panel pursuant to 50 C.F.R. §§ 600.751-600.760.  Even before considering the counts under the National Standards, 16 U.S.C. § 1851(a)(1-10), Lovgren alleges that there exists threshold constitutional and statutory violations that also warrant remand.  For example, when "shall" is the legislative intent the Defendants do not have the discretion to ignore the commanding imperative.  *See*, *Anderson, Receiver v. Yungkau, Executor*, 329 U.S. 482,485, 67 S.Ct. 428, 430

3

(1947) ("shall" is the language of a command); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 36, 118 S.Ct. 956, 963 (1998) ("an obligation impervious to judicial discretion.");  *Alabama v. Michael Herman Bozeman*, 533 U.S. 146, 153, 121 S.Ct. 2079, 2085 (2001) (citing, *Anderson, Receiver v. Yungkau*).  In addition, Amendment 16 has taken landing history from the fishermen, which invokes issues of substantive and procedural due process. Given this constitutional setting, it is fundamental that the fishermen are provided the highest levels of due process and the right to a fair hearing.

## IV.   BACKGROUND TO COUNTS 1 AND 2

### A.   WHAT IS LANDING HISTORY? [2]

Amendment 16 has already taken 2010 harvest quotas and will take annually future allocations from the Fishermen.  The Defendants used landing history from the "commercial dealer database" for the years from 1996 through 2006 to allocate quotas.  Administrative Record[3]  056500, 056563.  *See also*, 75 Fed. Reg. 18276, 18339 (Apr. 9, 2010).  From 1996 through 2006, the fishermen were required to submit a fishing vessel trip report (FVTR) for each landing of harvest.  These FVTRs indicate the species and quantities of fish caught per voyage by the vessel and submitted to Defendants for data collection purposes.[4]   The FVTRs state the quantity of various fish species aboard the vessel just prior to removing the harvest from the vessel.  Similarly, from 1996 through 2006, fish dealers, those who purchased the harvest from the vessel, the first purchaser, were also required to submit dealer reports.  50 C.F.R. § 600.10. The dealer reports contain information such as the quantities of each fish species purchased and

---

2. "*Land*" means, in pertinent part, to offload fish from a vessel.  50 C.F.R. § 648.2 (10-1-09 Edition). Landing history is the quantity of fish species that were removed from the vessel.
3.  The Administrative Record is cited as "AR" hereinafter.
4. http://web.archive.org/web/20000101000000020041231235959/http://www.accsp.org/program.html.  [last visited 10/07/2009 10:32:44 AM].

the prices paid for each species of fish.  The commercial dealer reports from 1996 to 2006 are the records used under Amendment 16 to allocate the quantities of various species of fish to individual vessels.  AR 056563.  Beginning early in 2003, fish dealers were required to electronically file their reports via the Internet imputing their data into a software program. [5] The Atlantic Coastal Cooperative Statistics Program (ACCSP) developed the computer software program, collects the landing data, and is a partner with NMFS. [6]  The software program is named the <u>Standard Atlantic Fisheries Information System</u> (SAFIS).[7]  This software contains errors (programming and human) that caused the taking of the landing history.

   B.   ADMISSION AND CONSEQUENCES OF LANDING HISTORY.

      1.   <u>Public admission of database errors affecting the NE Multispecies</u>.

   Amendment 16 determines annual catch limits (ACL) for the fishermen.  AR 056486, 056500, 056533.  *See also*, 75 Fed. Reg. 18262, 18276, 18309 (Apr. 9, 2010) (annual catch entitlements are equal to the "cumulative fishing history attached to each permit").   The ACLs are the total quantities of various fish species that may be harvested in a given year.  AR 056469.  *See also*, 75 Fed. Reg. 18117 (Apr. 9, 2010) (Table 3B).  The quantities of fish allocated to a sector are the aggregate of the individual landings of the members within the sector.  AR 056466, 056500.  *See also*, 75 Fed. Reg. 18114, 18276 (Apr. 9, 2010) (sectors will be allocated harvest quantities in an amount equal to what individual members have in landing history).  In addition to development of the sectors, Amendment 16 regulates the harvest of vessels that do not join a sector.  These non-sector vessels are part of the "common pool" that are also allocated harvests

---

5. The implementation dates are Maine (2004), New Hampshire (2004), Massachusetts (2004), Rhode Island (2003), Connecticut (2004), New York (2004), New Jersey (2004), and Maryland (2003).
6. http://www.dnr.state.md.us/fisheries/recreational/articles/SAFIS.html [visited 11/04/2010].
7. <u>Id</u>.

quantities.  75 Fed. Reg. 18267 (Apr. 9, 2010) (consisting of "those vessels not participating in an approved sector.")  What all this simply means is that the future quantities of fish allocated to a fisherman is based upon past catch levels.[8]  But the SAFIS software and NMFS database contains errors that failed to correctly allocate the past quantities of fish to a vessel owner, or the SAFIS misallocates the species and quantities of fish to another owner, who did not make the harvest.[9]  On August 7, 2007, during a public meeting of the MAFMC, the Regional Administrator, Patricia Kurkul in response to questions about Amendment 16, admitted that the computer database contains errors.  (Attached hereto as Lovgren's Exhibit "P-1").  According to Ms. Kurkul some of database errors are as follows:

a.    "And as we've repeatedly said, the further back you go [in time], the less reliable the information is.  And we fully admit that."  (Ex. P-1 at 166:20-22).

b.    There are some time periods with "coding errors."  (Ex. P-1 at 166:22-23).

c.    "The other thing I think that's important to point out is this database wasn't designed to do the kinds of things that we're asking it to do right now."  (Ex. P-1 at 167:10-13).

d.    Another type of error is that harvest landings have been "assigned to the wrong boats."  (Ex. P-1 at 172:15).  But "[i]t only matters to the individuals involved."   (Ex. P-1 at 173:1-2).

e.    But the assignment of landings to individuals was "not the primary use of the system" when the database was implemented.  (Ex. P-1 at 173:1-4).

Ms. Kurkul admitted that the errors do matter, she stated that "[i]t only matters to the

───────────────

8.  In this case, past performance (catch history) does determine future results (allocations).
9.  One analogy is that a federal employee is coded with an incorrect lower GS number and receives a lower salary than otherwise entitled, while another federal employee is coded with a higher GS number than entitled and is overpaid.  Worse yet, it is not merely a matter of swapping GS codes between these two employees, for each is unknown by the other.  Further the errors persist not only for 2010, but each year thereafter because the government agency will not take corrective measures.

individuals involved."  (Ex. P-1 at 173:1-2).  Thus the basis of this lawsuit, in part.

       2.    <u>Different fishery, but same database problems</u>.

On March 1, 2006, during a meeting of the Fishery Management Action Team (FMAT) for the sea scallop FMP, a memorandum was circulated among the committee explaining the flawed database and the impact upon landing histories.  (Attached hereto as Lovgren's Exhibit "P-2")  "There are also many errors in both [Vessel Trip Reports] VTR and dealer datasets, as we are discovering continuously."  Ex. P-2 at 1.  "[W]e have no expertise or time for correcting these errors."  Ex. P-2 at 1.  The "only way to obtain accurate data . . . is to derive trip data from the permit, VTR, and dealer files, then identify errors and report them to NMFS." Ex. P-2 at 2.

In summary, the fishermen's harm consists of lost landing history (both paper and electronic data) from a NOAA/NMFS computer database.[10]  Defendants admit that the database contains errors, which were known to exist prior to implementing Amendment 16.  Therefore, Defendants cannot be "consistent with the national standards."  16 U.S.C. § 1853(a)(1)(C) (requiring consistency with the national standards and other provisions of the statute).  For example, the Magnuson-Stevens Act requires -

      a.    the "collection of reliable data is essential to the effective conservation, management and scientific understanding of the fishery."   16 U.S.C. § 1801(a)(8).

      b.    the use of "sound conservation and management principles."  16 U.S.C. § 1801(b)(3).

      c.    Management programs that "utilizes, and is based upon, the best scientific information available [and] is responsive to the needs of . . . States and citizens."  16 U.S.C. § 1801(c)(3).

In summary, the computer database contains many errors that takes both past and future

---

10.  Broadly, the "lost" records also includes such errors as landing history being misallocated to another vessel; that is, attributing landing history to vessels that are not otherwise entitled to or in excess of their true history.

revenue from the fishermen.  Just as the fishermen are subject to penalties when in violation of

harvest regulations, so to there are agency statutory limits on their discretion.  *Schoeffler v.*

*Kempthore*, 493 F.Supp.2d 805, 807 (W.D. La., 2007) (there can be no rule of law, if

administrative agencies "fail to fulfill their statutory duty without consequence.")  Defendants

have publicly admitted that they know of the errors, have admitted they have neither the

expertise nor the time to correct the errors, and that fishermen are harmed by the errors.  (P-1).

Defendants have exclusive control over the best evidence, the FVTRs, but Defendants refuse to

produce the information or correct the harm.

## V.       CONSTITUTIONAL VIOLATIONS – DUE PROCESS & TAKING

### COUNT I

<u>Amendment 16 violates the Constitution of the United States, Amendment V.</u>

Under the Constitution of the United States, "[n]o person shall . . . be deprived of  . . .

property without due process of law, nor shall private property be taken for public use, without

just compensation."  U.S. CONST. Amend. V.  In this case, because of database errors the taking

for public use is the diminution of fishing harvest for some fishermen; i.e., individuals that are

prohibited from harvesting quantities of fish that previously belonged to their vessel, or the

transfer of their fishing harvest to the enrichment of other fishermen through the misallocation.

As set forth above and below, the NMFS database contains numerous errors and Defendants

know that the landing data is flawed.  The purpose of the Fifth Amendment's protection is to

prevent "[g]overnment from forcing some people alone to bear public burdens which, in all

fairness and justice, should be borne by the public as a whole."  *Armstrong v. United States*, 364

U.S. 40, 49 (1960).  ("Whether a compensable taking has occurred is a question of law based on

factual underpinnings.")  *American Pelagic Fishing Company v. United States*, 379 F.3d 1363,

8

1371 (Fed. Cir. 2004) (internal citations omitted). The Supreme Court has recognized that regulation of private property may constitute a taking if the regulation "goes too far." *Lucas v. S.C. Coastal Council*, 506 U.S. 1003, 1014 (1992).

In this case, the flawed landing data that determines the annual allocation to the vessel is a restriction upon personal property that is greatly disproportionate because the accurate landing history would not contribute to the overall problem being addressed by Amendment 16. E.O. 12630 § 4(b) (when an action places a restriction on use of private property, "the restriction imposed on the use shall not be disproportionate to the extent to which the use contributes to the overall problem that the restriction is imposed to redress.") That is Amendment 16 sets forth overall fishing harvest levels for each species and individual allocations are subject to this greater control. AR 056465. (annual catch limits determine the overall harvest specifications including the allocations between sectors and common pool vessels). The disproportionate impact is cumulative because the faulty database is repeated each year resulting in repetitive annual regulatory takings. *Schoeffler*, 493 F.Supp.2d at 817. (the continuing violations doctrine allows plaintiffs to sue when subsequent violations occur outside the statute of limitations). Accurate landing history will not contribute to the problems that lead up to the development of Amendment 16; therefore, the taking of landing history is disproportionate. E.O. 12630 § 4(b).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902 (1976) (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586 (1971), the Supreme Court held that issued licenses may not be taken away without procedural due process. The *Bell* case involved a driver whose license was suspended for failure to carry liability insurance when he got in an accident. Although the

9

fishermen have not lost their licenses, they have lost their right to 'drive' to sea and earn income

on the fish taken away by the database.  That is, their earnings are lessened by the amount taken

away by the database.  In *Bell* it was the suspension of the driver's license that required notice

and an opportunity to be heard even though the permit suspension would have been reinstated

after some period.  But in this case, the Fishermen sustain a repetitive annual "suspension" of

fishing quota every year without automatic reinstatement and under values the permit

accordingly in the marketplace.  In *Mathews*, the government's procedures satisfied due process

because the injured party could be fully compensated by the agency's final action, if the

interruption of benefits had been erroneous.  In Lovgren, however, the fishermen will not be

compensated for the past or future loss of livelihood under the final rule.  In fact, unless

Amendment 16 is remanded and the landing shortages and misallocations are corrected, the harm

is renewed annually.  *Schoeffler*, at 817 (the continuing violations doctrine).

 In summary, there are no technical requirements for Due Process under the Fifth

Amendment, but when a person is deprived of a substantive right, he is entitled to notice and an

opportunity to be heard.  *American Pelagic*, 379 F.3d 1371 (a regulatory taking occurs when

government action affects and limits private use).  E.O. 12866, §1(b)(7) (requiring best sources

when there are consequences to the regulation).

## VI.     STATUTORY VIOLATIONS UNDER THE MAGNUSON-STEVENS ACT

### COUNT II
### Amendment 16 violates the MSA as set forth at 16 U.S.C. § 1851(a)(2).

 Pursuant to 16 U.S.C. § 1851(a)(2) any promulgation of regulations requires that

"management measures shall be based upon the best scientific information available."   For

brevity, Lovgren fully incorporates the software and database errors alleged above.  Defendants

have the exclusive control of "superior [and] contrary data [that is] available and that the agency

[knowingly] ignored." *North Carolina Fisheries Ass'n v. Gutierrez*, 518 F.Supp.2d 62, 85

(D.D.C. 2007) (citations omitted).   The superior data is the paper reports in the exclusive

possession of Defendants.  Defendants have already admitted the "only way to obtain accurate

data [is from] VTR, and dealer files, then identify errors and report them to NMFS."  Ex. P-2 at

2.  Even if there is no constitutional taking, the Defendants have violated National Standard 2,

which requires that Amendment 16 be remanded.  E.O. 12866, §1(b)(7) (requiring best sources

when there are consequences to the regulation).

## COUNT III
Amendment 16 violates the MSA as set forth at 16 U.S.C. § 1851(a)(4).

Pursuant to 16 U.S.C. § 1851(a)(4), "[c]onservation and management measures shall not

discriminate between residents of different states."   Lovgren fully incorporates the arguments in

Counts IV and VII.  The NE Multispecies groundfish advisory panel, which was selected by the

NEFMC's executive committee, did not fairly represent the affected fishermen because there

was not a single representative from the Mid-Atlantic region.  Consequently, the members of the

NE Multispecies ground fishery advisory panel were not representative of the geographical

migration of the fish species or the affected fishermen in the Mid-Atlantic region.  16 U.S.C. §

1852(g)(3)(B).  Further, the NEFMC and the NE Multispecies advisory panel failed to conduct

public hearings in the Mid-Atlantic geographical area of the affected fishermen, or to provide an

opportunity to be heard in the development of fishery management plans and amendments.  16

U.S.C. §§ 1852(h)(3), 1852(i)(2)(C).

## COUNT IV
Amendment 16 violates the MSA as set forth at 16 U.S.C. § 1851(a)(6).

Pursuant to 16 U.S.C. § 1851(a)(6), "[c]onservation and management measures shall take

into account and allow for variations among, and contingencies in, fisheries, fishery resources,

and catches."  Because the Mid-Atlantic fishermen were not represented on NE Multispecies

advisory panel, Amendment 16 only represents the interest of the New England fishermen.

Without reiterating, but incorporating the arguments raised in Counts III, IV and VII, the

Secretary violated National Standard 6.

**COUNT V**

Amendment 16 violates the MSA as set forth at 16 U.S.C. § 1851(a)(8).

Pursuant to 16 U.S.C. § 1851(a)(8), "[c]onservation and management measures shall,

consistent with the conservation requirements . . . take into account the importance of fishery

resources to fishing communities by utilizing economic and social data that meet the

requirements of paragraph (2)[best science], in order to (A) provide for sustained participation of

such communities, and (B) to the extent practicable, minimize adverse economic impacts on

such communities."  Defendants admit that National Standard 8 requires that communities are

provided "continuing access to fishery resources."  AR 048063.  Thus, requiring the use of

"economic and social data" in compliance with National Standard 2 (best science) and

minimizing adverse economic impacts.  16 U.S.C. § 1851(a)(8).  In this case, the Mid-Atlantic

region was not analyzed and even the sectors and catch shares were not considered. [11]  75 Fed.

Reg. 55305 (Sep. 10, 2010) (it was "virtually impossible" because of the rapid implementation).

*See also*, Count X.  Further, Defendants later admitted that the "required information" to

evaluate the impacts of catch shares on fishermen was not collected before implementing

Amendment 16.  75 Fed. Reg. 55305 (Sep. 10, 2010).  The information was not collected

---

11.  "Catch Share" is a generic term used to describe fishery management programs "that allocate a specific portion of the total allowable fishery catch to individuals" and includes Limited Access Privileges (LAP) and Individual Fishing Quotas (IFQ).  The recipient of a catch share is directly accountable to stop fishing when its specific share allocation is reached." Attached hereto as Lovgren's Exhibit "P-3," the NOAA Catch Share Policy at (i), 3.  *See also*, 75 Fed. Reg. 55305 (Sep. 10, 2010) (citing the draft document).

because "[t]he rapid implementation of the groundfish catch share program made capturing a full

pre-implementation baseline virtually impossible."  75 Fed. Reg. 55305 (Sep. 10, 2010)

(Amendment 16 is the largest catch share program ever implemented in the U.S.)  Defendants

have violated National Standard 8 by not using (i) the best science, see Counts I and II; (ii)

failing to represent the interest of the Mid-Atlantic fishermen, see Counts III, IV and VII; and

(iii) failing to provide for sustained participation by the Mid-Atlantic fishermen and their

communities.  16 U.S.C. § 1851(a)(8).  *See also*, 75 Fed. Reg. 55305 (Sep. 10, 2010) (within five

months Mid-Atlantic fishermen had already exited the fishery).  In summary, Defendants have

admitted they have not gathered the required information on catch shares or sectors because of

the rapid implementation of Amendment 16.  75 Fed. Reg. 55305 (Sep. 10, 2010).

## COUNT VI
### Amendment 16 violates the MSA as set forth at 16 U.S.C. § 1851(a)(9).

Pursuant to 16 U.S.C. § 1851(a)(9), "[c]onservation and management measures shall, to

the extent practicable, (A) minimize bycatch and (B) to the extent bycatch cannot be avoided,

minimize the mortality of such bycatch."   Lovgren avers that Amendment 16 does not minimize

bycatch of winter flounder or other species and actually increases the mortality through

regulatory discards by the New Jersey and New York fishing communities because they must

discard the fish when caught in the Southern New England fishing area.

## COUNT VII
### Amendment 16 violates the MSA as set forth at 16 U.S.C. § 1852 et seq.

The Secretary of Commerce failed to "ensure a fair and balanced apportionment . . . of

the active participants (or their representatives) in the commercial and recreational fisheries."  16

U.S.C. § 1852(b)(2)(B).  The NEFMC does not represent the interest of the New Jersey or the

New York fishing communities.  Compare 16 U.S.C. § 1852(a)(1)(A) (representing fishermen in

13

the New England area) with 16 U.S.C. § 1852(a)(1)(B) (representing fishermen in the Mid-

Atlantic area).  Pursuant to 16 U.S.C. § 1852(b)(1)(B), Patricia Kurkul, NE Regional

Administrator, is a voting member of the NEFMC.  Ms. Kurkul is also a member of the NEFMC

Executive Committee, which selects members of the NE groundfish advisory panel.  In addition,

Ms. Kurkul is a member of the NE groundfish oversight committee thereby creating a conflict of

interest and violates the purpose and intent of advisory panel functions, which is "to provide fair

representation to commercial fishing interests in the geographical area of authority of the

Council."  16 U.S.C. § 1852(g)(3)(B)  (NEFMC as lead council on Amendment 16 has

obligation to represent all fishermen, not just New England fishermen).  The NE Multispecies

groundfish advisory panel, which was selected by the NEFMC's executive committee, did not

fairly represent the affected fishermen because there was not a single representative from the

Mid-Atlantic region.  Consequently, the members of the NE Multispecies ground fishery

advisory panel were not representative of the geographical migration of the fish species or the

affected fishermen in the Mid-Atlantic region.  16 U.S.C. § 1852(g)(3)(B).  Further, the NEFMC

and the NE Multispecies advisory panel failed to conduct public hearings in the Mid-Atlantic

geographical area of the affected fishermen, or to provide an opportunity to be heard in the

development of fishery management plans and amendments.  16 U.S.C. §§ 1852(h)(3),

1852(i)(2)(C).

## COUNT VIII
### Amendment 16 violates the MSA as set forth at 16 U.S.C. § 1852 et seq.

When making appointments, the Secretary "shall," but in this case failed to "ensure a fair

and balanced apportionment . . . of the active participants (or their representatives) in the

commercial and recreational fisheries."  16 U.S.C. § 1852(b)(2)(B).  Just as in Count VII, where

the NEFMC and NE advisory panels violated the Magnuson-Stevens Act by not representing the

14

interests of the Mid-Atlantic fishermen by excluding them, the Secretary also failed to enforce upon the MAFMC its statutory duties and obligations to represent the fishermen within its geographical scope of its authority.   Specifically, the MAFMC failed to represent its constituents by failing to ensure that the NE Multispecies advisory panel contained members from the Mid-Atlantic region.  16 U.S.C. § 1852(g)(3)(B).

### COUNT IX
### Amendment 16 violates the MSA as set forth at 16 U.S.C. § 1853a(c)(6)(D)(i).

Pursuant to 16 U.S.C. § 1853a(c)(6)(D)(i), all limited access programs must be approved by more than 2/3 of those voting in a referendum.  It is undeniable that Amendment 16 created catch shares, which includes specific programs defined under the Magnuson-Stevens Act, such as Limited Access Privileges (LAP) and Individual Fishing Quotas (IFQ).  Ex. P-3 at (i), 2-3. *See also,* 16 U.S.C. § 1802(26)(A)-(B) (limiting individual harvest expressed in units of fish that are merely a portion of the total allowable harvest within a fishery).  The Magnuson-Stevens Act defines *Allocation* as a "direct and deliberate distribution of the opportunity to participate in a fishery among identifiable, discrete user groups or individuals."  50 C.F.R. § 600.10.  A *Limited access system* is a "system that limits participation in a fishery to those satisfying certain eligibility criteria or requirements contained in a fishery management plan or associated regulation."  50 C.F.R. § 600.10.  All limited access programs "shall" promote "social and economic benefits."  16 U.S.C. § 1853a(c)(1)(C)(iii).  But in this case the "rapid implementation of the groundfish catch share program [under Amendment 16] made capturing a full pre-implementation baseline virtually impossible."  75 Fed. Reg. 55305 (Sep. 10, 2010). Defendants admit that the "required information" to evaluate the impacts of catch shares on fishermen was not collected before implementing Amendment 16 and the use of catch share programs will have an impact on those individuals participating in the fisheries.  *Id*.  *See*, P-3 at 7

15

(before promulgating catch shares councils should evaluate biological, economic and social

criteria).  In summary, the Defendants did not conduct a referendum, so there was no voting on

whether to adopt catch shares.  Defendants simply did not perform any of the statutory

requirements under 16 U.S.C. § 1853a.  *Schoeffler*, at 807 (there must be consequences when an

agency fails to fulfill a statutory duty).

## VII.   OTHER FEDERAL STATUTORY VIOLATIONS

### COUNT X
Amendment 16 violates National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4347.

Pursuant to 42 U.S.C. § 4332(2), all agencies shall "utilize a systematic, interdisciplinary

approach which will insure the integrated use of the natural and social sciences and the

environmental design arts in planning and in decisionmaking (sic) which may have an impact on

man's environment."  Pursuant to 40 C.F.R. § 1508.7, NEPA requires assessment of direct and

indirect cumulative impacts with respect to past, present and reasonably foreseeable future

regulatory actions.  NEPA also requires that federal agencies comprehensively analyze the

human environment.  40 C.F.R. § 1508.14.  Amendment 16 did not perform these NEPA

requirements with respect to the Mid-Atlantic region.

A.      DEFENDANTS DID NOT ANALYZE THE YEARS 1996 THROUGH 2001.

Defendants merely incorporated the "affected human environment" analysis from

Amendment 13 for the years 1994 through 2001.  AR 048064.  But Amendment 13 did not

include catch shares or sectors, obviously than there was no assessment of catch shares or sectors

in the incorporated material.  Yet as a consequence of Amendment 16, Defendants admitted there

has been human impact on the Mid-Atlantic region that  "include[s] loss of employment

opportunities and shoreside (sic) infrastructure, and disruption to social networks."  75 Fed. Reg.

55305 (Sep. 10, 2010).  NEPA requires the analysis of catch shares, sectors and impacts on the

Mid-Atlantic region <u>before</u> promulgation of the final rule.  But Defendants were in a hurry, so it was "virtually impossible" to assess adverse impacts, especially in the Mid-Atlantic region.  75 Fed. Reg. 55305 (Sep. 10, 2010).  *See*, P-3 at 7 (before promulgating catch shares councils should evaluate biological, economic and social criteria).

> B.     DEFENDANTS DID NOT ANALYZE 2001 THROUGH 2007.

Defendants incorporated the "affected human environment" analysis from Amendments 5 (1994) and 7 (1996) for purposes of the years 2001 through 2007 under Amendment 16.  AR 048064.  But neither Amendments 5 nor 7 included sectors, catch shares or the impact upon the affected human environment in the Mid-Atlantic region.   Defendants admit that "NEPA requires [that] analysis should be done by means of a systematic, interdisciplinary approach which will ensure the integrated use of the natural and social sciences . . . in planning and decision-making. When analyses predict that a fishery management action or policy will have a *significant* effect on the human environment, a detailed Environmental Impact Statement (EIS) with analysis of these impacts."   AR 048063.  (omitted internal citations and quotations).  But again, the NEPA analysis was not performed for the Mid-Atlantic region because the "rapid implementation" of the catch share program made it "virtually impossible."  75 Fed. Reg. 55305 (Sep. 10, 2010). Therefore, Amendment 16 should be remanded for NEPA compliance.  *See*, P-3 at 7 (before promulgating catch shares councils should evaluate biological, economic and social criteria).

**COUNT XI**
<u>Amendment 16 violates the Regulatory Flexibility Act</u>.

Defendants are subject to the rulemaking requirements of 5 U.S.C. § 553(a) et seq.

> A.     THE REGULATORY FLEXIBILITY ACT.

Pursuant to 5 U.S.C. § 601(3), each Plaintiff qualifies as a "small business."  Defendants failed to comply with 5 U.S.C. § 602(a)(1-2) by not publishing as required in the Federal

Register during the months of October and April each year the description and summary of Amendment 16.  Defendants failed to comply with 5 U.S.C. § 602(b) by not transmitting the Amendment 16 agenda to the Chief Counsel for the Advocacy of the Small Business Administration for comment.  Defendants also failed to certify or publish that there was <u>not</u> "significant economic impact on a substantial number of small entities" pursuant to 5 U.S.C. § 605(b), which than would have compelled Defendants' compliance with 5 U.S.C. §§ 603 and 609.  In addition, Defendants failed to comply with 5 U.S.C. § 603(a) by not transmitting the initial regulatory flexibility analysis to the Chief Counsel for Advocacy of the Small Business Administration.  By failing to transmit the initial regulatory flexibility analysis to the Chief Counsel for Advocacy of the Small Business Administration, the Defendants failed to comply with 5 U.S.C. § 609.

B.      THE CONGRESSIONAL REVIEW ACT (CRA), 5 U.S.C. §§ 801-808.

Pursuant to the CRA, the U.S. Congress mandated that any agency promulgating a rule "shall" submit the rule to the House, the Senate and to the Controller General.  5 U.S.C. § 801(a)(1)(A).  Defendants did not comply with any section under 5 U.S.C. §§ 801-808.  Defendants ignored this legislative command and there should be consequences.  *See*, *Anderson* and *Schoeffler*.

C.      PRESIDENTIAL EXECUTIVE ORDER NO.: 12866.

Each agency "shall prepare a Regulatory Plan (Plan) of the most important significant regulatory actions that the agency reasonably expects to issue in proposed or final form in that fiscal year . . . no rulemaking shall commence . . . without the approval of the agency's Regulatory Policy Officer, and the Plan shall contain at a minimum:  (A) [What are the] objectives and priorities and how they relate to the President's priorities."  *Id*. § 4(c)(1)(A).

18

In addition, the plan(s) "shall be published annually in the October publication of the Unified

Regulatory Agenda." *Id*. § 4(c)(7).  Defendants have not done this either.  In summary,

Defendants have violated numerous mandatory "shall" congressional commands under the RFA,

CRA.  *See also*, E.O. 12866, § 6(a)(3) (an agency is required to adhere to the Regulatory

Flexibility Act).  Again remand is warranted for development consistent with these laws.

## COUNT XII
### The NMFS Northeast Regional Administrator exceeded statutory authority.

Amendment 16 contains Limited Access Privilege Programs (LAPP), specifically, catch

shares. AR 056478, 056480, 056503-05, P-3 at 3.  Pursuant to 16 U.S.C. § 1853a(c)(6)(D), there

must be a referendum that requires approval of at least 2/3$^{rds}$ of eligible permit holders.

Amendment 16 promulgated catch shares without a referendum.  The NMFS Northeast Regional

Administrator, Patricia Kurkul, exceeded statutory authority by placing herself on several

committees, than influencing decision-making with her voting and mere presence.  She was a

member of: (1) the NEFMC Executive Committee, which also selects members of the NE

groundfish advisory panel, (2) the NE groundfish oversight committee, (3) the interspecies

committee, and (4) the sea scallop committee.  There is an inherit conflict of interest that violates

the purpose and intent of these advisory panel functions, which is "to provide fair representation

to commercial fishing interests in the geographical area of authority of the Council."  16 U.S.C. §

1852(g)(3)(B).

## COUNT XIII
### The Freedom of Information Act (FOIA), 5 U.S.C. §§ 552 et seq.

This Court has FOIA jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and the Court

may **"**enjoin the agency from withholding agency records and to order the production of any

agency records improperly withheld from the complainant."   Pursuant to 5 U.S.C. §

19

552(a)(4)(B), "the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action."  In this case, Defendants have the exclusive control of the paper documents sought in Counts I and II.  The paper records are critical for determining accurate landing history for the past harm and future allocations under Amendment 16.  The Fishermen have already sustained loss under Amendment 16 and this harm will be repeated annually without this remedy.

## VIII.   CONCLUSION, REMEDIES AND ATTORNEY FEES

In summary, the Fishermen seek financial compensation for economic damages and a remand of Amendment 16 for further development, including the referendum vote, consistent with the laws.  In addition, the Magnuson-Stevens Act provides for a fishery negotiation panel, which could address individual claims and assist with specific management measures; i.e., referendums, catch shares, and landing database histories.  16 U.S.C. § 1855(g) et seq., 50 C.F.R. §§ 600.751-600.760.  Pursuant to 5 U.S.C. § 504(a)(2) the fishermen seek award of attorney fees, costs and other relief as deemed appropriate by the Court.

Date:  November 22, 2010.                      By: /s/Patrick Flanigan
                                                    PATRICK FLANIGAN
                                                    Attorney for Lovgren Plaintiffs

20